## FULLER *v.* DOWDELL.

1. A transfer after payment of an execution for taxes to the person whose money was paid to the comptroller-general in settlement of it, by the attorney representing the State and the sheriff who had the execution to enforce, was proper. The person taking the transfer, who was not one of the defendants therein, could enforce the execution against the property of one of the defendants, a surety of the tax-collector.

2. Though the execution was not entered on the docket in the office of the clerk of the superior court within thirty days, it did not thereby lose its lien as against the defendant.

3. That all the property of the tax-collector had been sold, and the proceeds applied, on rule for distribution, to a younger execution, and thereby exhausted, did not release the surety if he was surety on the younger execution also; the application of the fund having been made by a court of competent jurisdiction, and no exception to its ruling having been taken, and the failure of the plaintiff in the older execution to except not being such an act as to discharge the surety.

May 7, 1890.

Illegality. Executions. Liens. Record. Principal and surety. Practice. Before Judge WELLBORN. Habersham superior court. September term, 1889.

On January 26, 1885, the comptroller-general issued an execution against E. Fuller, tax-collector, and his sureties, M. Fuller, J. P. Phillips, O. J. Reynolds and

M. Parker, for $1,995.84 taxes collected for 1884, with twenty per cent. per annum and costs. On the 4th of the next May, it was levied on lands as the property of E. Fuller and of O. J. Reynolds; and on the next July 27th, all that was due on it was the sum of $427, which, on that day, was paid to the comptroller-general by J. P. Phillips, but the money he paid belonged to Mrs. M. C. Bass. On August 15, the following entry was placed on the execution and signed by W. S. Erwin, attorney for State, and by the sheriff:

"In consideration of the payment made to the comptroller-general, I, as attorney for the State, transfer the within *fi. fa.* to Mrs. Bass, except the penalty of 20 per cent. due by the tax-collector for default of payment of taxes, with all the rights of enforcement."

On December 17, 1886, the clerk of the superior court placed on the execution this entry:

"Georgia, Habersham county. Entered on execution docket of the superior court of said county."

On March 8, 1888, in consideration of $427, the execution was transferred without recourse to W. L. Dowdell, the transfer being signed by Mrs. M. C. Bass, by J. P. Phillips, agent, and by the sheriff. On May 27, 1889, it was levied on land as the property of M. Fuller, who interposed an affidavit of illegality, the questions made by which will be hereafter seen in the assignments of error.

On the trial it appeared that on the first Tuesday in July, 1887, the sheriff, under an execution in favor of Furr against E. Fuller and others, sold certain lands as the property of E. Fuller for $567, which sum was claimed by Furr under the execution raising it (which had been transferred to him by the ordinary, who issued it), by one West under an execution against E. Fuller *et al.*, and by Mrs. Bass as transferee of a *fi. fa.* in favor of the State of Georgia against E. Fuller *et al.*; and that the judgment of the court upon a rule to distribute

the money was, that after sundry small payments, the bulk of the money be credited on the Furr execution, not being enough to satisfy it. Counsel for M. Fuller offered to show that the property which had raised this fund was all that E. Fuller owned, and that the Furr execution was younger than the one now in question. But he admitted that M. Fuller was also one of the securities on the Furr execution; and the court held that this prevented his setting up by illegality the payment of the money to a younger execution, as a defence, he being a security in both instances. The court also overruled the grounds of illegality and ordered the execution to proceed. M. Fuller excepted and assigned error as follows:

(1) The execution was paid off by J. P. Phillips to the comptroller-general before W. S. Erwin as attorney attempted to transfer it, and no money was paid to him for any transfer.

(2) It was never recorded within the time required by law.

(3) The court's ruling that the credit on the younger execution of the fund raised by sale of E. Fuller's property in 1887, did not release M. Fuller as to this one.

(4) And his overruling the affidavit of illegality and ordering the execution to proceed.

JONES & BOWDEN and W. I. PIKE, by brief, for plaintiff in error.

No appearance *contra*.

SIMMONS, Justice.

1. The facts of this case will be found in the official report; and under these facts, there was no error in the ruling of the court complained of in the first ground taken in the bill of exceptions. Mrs. Bass was not one of the defendants in the tax-execution, and it was ad-

v. 85-30

mitted at the trial that it was her money which was paid to the comptroller-general, and not the money of Phillips, the co-surety in the execution. Mrs. Bass, having made the payment on the execution, had the right, under section 891(a) of the code, to have it transferred to her, and it was properly transferred by the attorney representing the State and by the sheriff who had the execution in his hands to enforce.

2. The 2d ground in the bill of exceptions complains that the *fi. fa.* was not recorded in the time required by law, etc. While it is true in fact that the *fi. fa.* was not entered on the execution docket within the thirty days, as the above section prescribes, still we do not think the *fi. fa.* lost its lien as against this defendant by the failure to enter it upon the execution docket within the time prescribed by the statute. The plaintiff in error in this case was one of the defendants in the execution; and we held in the case of *National Bank of Athens* v. *Danforth et al.*, 80 *Ga.* 56(4), that this law was made to protect third parties, not the defendants in *fi. fa.* The court said in that case: "No doubt the main purpose and policy of the statute was to protect purchasers and others who might become interested after the date of the transfer. . . There is no indication in the statute of any purpose to serve the defendant by registering the transfer or entering it on the execution docket. The defendant cannot possibly be hurt by one going forward and paying taxes and taking a transfer. . . And we think these *fi. fas.* are good in the hands of the bank as against Mrs. Clayton, the defendant, but they are not good as against others."

Nor is this ruling in conflict with the case of *Hoyt* v. *Byron*, 66 *Ga.* 351, relied upon by the plaintiff in error. In that case the tax *fi. fa.* had been transferred to Payne, and then to Hoyt, and had not been registered as required by law, and was levied on certain lands as

the property of Lee, the defendant in the tax *fi. fa.*, and the property was claimed by Byron and others; and the court held that the *fi. fa.* had lost its lien as against the claims of Byron *et al.* If Lee, the defendant in *fi. fa.*, had attempted to resist the lien upon that ground, we apprehend the ruling of the court would have been different.

3. It appears from the facts in the case that the ordinary of the county also issued a tax execution against E. Fuller and Mastin Fuller, the present plaintiff in error, and it was levied upon certain land which was said to have been all the property of E. Fuller. The land was sold, and in a money rule against the sheriff to distribute the same, the court awarded it to the *fi. fa.* issued by the ordinary, which was younger than the one issued by the State. Both of the *fi. fas.* were before the court and claimed the money, and Mastin Fuller, the plaintiff in error, was a defendant in both *fi. fas.* The trial judge ruled that Mastin Fuller, the security, being defendant in both *fi. fas.*, and the money having been applied to one of the *fi. fas.* in which he was defendant, thus relieving him of the payment of that *fi. fa.*, was not discharged by reason of the fact that the money was applied to the payment of the younger *fi. fa.* in which he was also surety. We are inclined to think the ruling of the court was right. We cannot see, under the facts of this case, that Mastin Fuller was injured at all by having the money applied to the younger *fi. fa.* The proceeds of the sale of land were not sufficient to pay both *fi. fas.* If it had been applied to the payment of the older one, the one now in controversy, the younger one issued by the ordinary would still have been in force against Mastin Fuller. Besides, the present *fi. fa.* was in court claiming that money, and a court of competent jurisdiction decided that it was not entitled to share in the pro-

ceeds thereof. That decision was the law of that case, unless reversed by a higher court. No exceptions were taken to the ruling of the court by the plaintiff in the *fi. fa.* now in controversy, nor do we think he was bound to except. He could stand upon the judgment of that court if he saw proper, and his failure to except to this ruling was not such an act as would discharge the present plaintiff in error.

There was no error in overruling the other grounds of illegality. They were too vague and uncertain to be submitted to the jury.      *Judgment affirmed.*